**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ROGELIO TRUJILLO-TERRAZAS,

     Defendant - Appellant.

No. 04-2075

ORDER

April 18, 2005

Before, **SEYMOUR**, **HARTZ**, and **McCONNELL**, Circuit Judges.

The opinion filed April 13, 2005, was filed in error. A revised opinion is attached and is filed nunc pro tunc. Please replace the attached version of the opinion with the one previously filed.

          Entered for the Court
          PATRICK FISHER, Clerk of Court


          by:
               Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

APR 13 2005

PATRICK FISHER
Clerk

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 04-2075

ROGELIO TRUJILLO-TERRAZAS,

Defendant-Appellant.

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO (D.C. NO. CR. 03-1997 RB)

Submitted on the briefs.[*]

Carlos Ibarra-Aguirre, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellant.

David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **SEYMOUR**, **HARTZ**, and **McCONNELL,** Circuit Judges.

**McCONNELL**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

Mr. Trujillo appeals his sentence of 41 months imprisonment for illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a). Mr. Trujillo argues that his sentence is unconstitutional in light of *Blakely v. Washington*, 124 S.Ct. 2531 (2004). We evaluate this claim now that the Supreme Court has issued its decision in *United States v. Booker*, 125 S.Ct. 738 (2005). We conclude that the district court committed plain error in sentencing Mr. Trujillo, and we VACATE his sentence and REMAND to the district court for resentencing in accordance with *Booker*.

**I.**

On October 8, 2003, a federal grand jury returned an indictment against Mr. Trujillo, charging him with illegal reentry after deportation. He pled guilty to the indictment without the benefit of a plea agreement on December 2, 2003. Applying the Sentencing Guidelines, the probation officer assigned a base offense level of 8, *see* U.S.S.G. § 2L1.2(a), and applied a 16-level enhancement because Mr. Trujillo had a prior Oklahoma conviction for arson, a crime of violence. *See* U.S.S.G. § 2L1.2(a)(1)(A)(ii). Mr. Trujillo received a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a total offense level of 21. The district court followed the government's suggestion of sentencing Mr. Trujillo to 41 months of incarceration, the low end of the sentencing range.

At sentencing, the district court judge expressed reservations about imposing the

sentence required by the then-mandatory Guidelines.  A potential source of this hesitation was the comparatively innocuous nature of Mr. Trujillo's prior conviction in Oklahoma for third degree arson.  Mr. Trujillo was upset that an ex-girlfriend had begun seeing someone new, and he acted on his frustration by throwing a lighted match into a 1980 Oldsmobile belonging to his ex-girlfriend's new love interest.  The Oklahoma state court determined that the appropriate compensation for the fire damage was the paltry sum of $35.00.  After hearing Mr. Trujillo's plea for leniency, the district court judge explained that while he was sympathetic to the defendant's argument, he was bound by the Guidelines.  The judge stated:

> Mr. Trujillo, you suggested that this is a lot of time that I want to give you.  You know what? I don't want to send anybody to jail, and I wish that I didn't have to.  And the fact is, as [your attorney] has explained to you, I'm sure, these Sentencing Guidelines are something that we're all struggling with, but they say what the minimum is that you have to do.  And I'm sorry, you know, under the circumstances, that I have to do what I have to do.

Sentencing Transcript, R. Vol. 3 at 5-6.  Mr. Trujillo argues that the district court's expressed reluctance to impose the sentence required by the Guidelines demonstrates the plain error in his sentencing.

## II.

Mr. Trujillo did not raise the constitutional challenge during sentencing. Consequently, we review the decision of the district court for plain error.  *United States v. Gonzalez-Huerta*, ___ F.3d ___, 2005 WL 807008 *3 (10th Cir. 2005) (en banc); *cf.*

3

*Booker*, 125 S.Ct. at 769 ("[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."). To establish plain error, Mr. Trujillo must demonstrate (1) that the district court committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002); *Gonzalez-Huerta*, 2005 WL 807008 *3. If the error meets all these conditions, the reviewing court may exercise discretion to correct the error if it would seriously affect the fairness, integrity, or public reputation of judicial proceedings to let the error stand. *Cotton*, 535 U.S. at 631-32. The analysis is relaxed when applied to potential constitutional error. *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001).

**1. Error**

The district court erred in sentencing Mr. Trujillo. In *Booker*, the Court extended the logic of *Blakely* to the Federal Sentencing Guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756. To remedy the constitutional infirmity created by applying judge-found facts to mandatory sentencing guidelines, the Court severed the provision of the federal sentencing statute making application of the Guidelines mandatory. *Id.* at 756-57 (excising 18 U.S.C. § 3553(b)(1)). The effect of the remedy in *Booker* was to render the

4

Guidelines advisory. *Id.* This rule applies to all cases on direct review, *id.* at 769; thus it was erroneous for the district court to treat the Guidelines as mandatory in sentencing Mr. Trujillo.

We stress, however, that the error in this case was not constitutional in nature. Nothing in *Booker*—or in the logic of the Sixth Amendment or the Due Process Clause—suggests that it is unconstitutional for Congress to establish a sentencing scheme that does not entail judicial discretion. The *Booker* majority's holding that the Guidelines are not mandatory was remedial in nature. *See id.* at 756-57 (Breyer, J.). The Court severed the provisions of the statute making the Guidelines mandatory, not because mandatory sentencing ranges are unconstitutional, but because allowing judges to decide contested questions of fact, pursuant to a preponderance of the evidence standard, is unconstitutional when such factfinding leads ineluctably to a higher sentence than would be warranted by the facts found by the jury or admitted by the defendant. By rendering the Guidelines discretionary, the Court saved the process of judicial factfinding from unconstitutionality under the Sixth Amendment. In this case, the sentencing court did not increase Mr. Trujillo's sentence by resolving contested questions of fact; the enhancements to the sentence were purely a product of prior convictions. The error here was therefore not constitutional in nature. *See Gonzalez-Huerta*, 2005 WL 807008 *2-3.

**2. Plain**

There is no doubt that the error here is plain. To be plain, an error must be "clear or obvious" under "well-settled law." *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000). An error is plain "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal." *Johnson v. United States*, 520 U.S. 461, 468 (1997). That is the situation here. Because the district court treated the Guidelines as mandatory, Mr. Trujillo's sentence is contrary to *Booker*. *Gonzalez-Huerta*, 2005 WL 807008 *3. This observation does not, of course, reflect negatively on the district court, which was simply applying the law in effect at the time.

**3. Affects Substantial Rights**

The third prong of plain error analysis inquires whether the error in sentencing Mr. Trujillo affected his substantial rights. For an error to have affected substantial rights, "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. at 725, 734 (1993). The burden to establish prejudice to substantial rights is on the party that failed to raise the issue below. *See United States v. Vonn*, 535 U.S. 55, 63 (2002); *Gonzalez-Huerta*, 2005 WL 807008 *3. To demonstrate that the mandatory application of the Guidelines affected substantial rights, a defendant must show a "reasonable probability" that the defects in his sentencing altered the result of the proceedings. *Cf. U.S. v. Dominguez Benitez*, 124 S.Ct. 2333, 2339 (2004) ("In cases where the burden of demonstrating

6

prejudice . . . is on the defendant seeking relief, we have invoked a standard . . . requiring the showing of 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'") (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)). Mr. Trujillo can make this showing by demonstrating a reasonable probability that had the district court applied the post-*Booker* sentencing framework, he would have received a lesser sentence.

Prior to *Booker*, district courts were closely tethered to the Guidelines when sentencing. Section 3553(b)(1) permitted sentences outside the range determined by the Guidelines only in a narrow set of circumstances defined by the Sentencing Commission. After *Booker*, district courts have a freer hand in determining sentences. While the Guidelines still exert gravitational pull on all sentencing decisions—district courts must "consult" the Guidelines, and sentences that unreasonably depart from the suggested sentencing range are at risk of reversal on appeal, *Booker*, 125 S.Ct. at 767—district courts now have more discretion to tailor sentences to the individual circumstances of a defendant. *Booker* suggests that the sentencing factors articulated in § 3553(a), which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion. *See id.* at 765–66; *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005); *see also United States v. Rodgers*, 400 F.3d 640, 641-42 (8th Cir. 2005) (applying § 3553(a) to find a sentence unreasonable). Applying the sentencing factors listed in § 3553(a) to Mr. Trujillo's case provides a

strong indication that had the district court applied the *Booker* framework, his sentence would have been lower and this lower sentence would be reasonable.

In addition to considering the sentencing range suggested by the Guidelines, *see* 18 U.S.C. § 3553(a)(4), § 3553(a) requires district courts to consider the "history and characteristics of the defendant," *id.* § 3553(a)(1), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6). The relatively trivial nature of Mr. Trujillo's criminal history is at odds with the substantial 16-level enhancement recommended by the Guidelines for this conduct. The state court assessed restitution of a mere $35.00 for Mr. Trujillo's third degree arson conviction, suggesting a quite minor offense. The Guidelines, however, look only to the conviction itself rather than the actual conduct underlying the conviction. This blunter approach means that the Guidelines do not distinguish between tossing a lighted match through a car window, doing minor damage, and a more substantial crime of violence such as an arson resulting in the complete destruction of a building or vehicle. To punish this prior conduct in the same manner could be seen to run afoul of § 3553(a)(6), which strives to achieve uniform sentences for defendants with similar patterns of conduct. *Cf. Booker*, 125 S.Ct. at 757 (explaining that the *Booker* remedy endeavors to maintain "a strong connection between the sentence imposed and the offender's real conduct"). The disconnect between the newly relevant § 3553(a) factors and the sentence given to Mr. Trujillo leads us to believe that there is a

reasonable probability that he would receive a lesser sentence under the new sentencing regime.

While the § 3553(a) analysis suggests that a departure from the Guideline range would be permissible post-*Booker*, the district court's expression of sympathy for Mr. Trujillo also implies the district court is inclined to depart. The district court expressed dissatisfaction with the mandatory character of the Guidelines, stating that "these Sentencing Guidelines are something that we're all struggling with, but they say what the minimum is that you have to do. And I'm sorry, you know, under the circumstances, that I have to do what I have to do." Sent. Tr., R. Vol. 3, at 6. The judge's voiced regret provides another reason to believe that the plain error here prejudiced Mr. Trujillo. Accordingly, we conclude that he has carried his burden of demonstrating that the plain sentencing error affected his substantial rights.

### 4. Integrity, Fairness, or Public Reputation

If a plain error affects the integrity, fairness, or public reputation of judicial proceedings, it is in the discretion of the reviewing court to correct the error. *Johnson*, 520 U.S. at 467. Our analysis under this fourth prong when an error is non-constitutional is not flippant or perfunctory; the standard is formidable, as we will only exercise our discretion when an error is "particularly egregious" and the failure to remand for correction would produce a "miscarriage of justice." *Gonzalez-Huerta*, 2005 WL

9

807008 *7 (quoting *United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir. 1997)).[1]  A

plain error affecting substantial rights cannot, "without more," satisfy the fourth prong.

*Olano*, 507 U.S. at 737; *Gonzalez-Huerta*, 2005 WL 807008 *6.

    In a run of the mill case with non-constitutional *Booker* error, for example where

a defendant pleads guilty and there is nothing remarkable about his criminal history, the

defendant will often not be able to satisfy this requirement.  In such a case, the

defendant's constitutional rights were not violated, and there is no reason to suppose that

the Guidelines sentence is anything but fair and reasonable.  Indeed, a non-constitutional

*Booker* error is "error" at all only as the serendipitous consequence of the severability

analysis the Supreme Court employed to correct the constitutional infirmity created by

the combination of judicial factfinding and mandatory application of the Guidelines.

Even if a defendant can demonstrate that the district court felt particular sympathy for

him, and might impose a lesser sentence on remand, failing to correct this type of plain

error would not impugn the fairness, integrity, and public reputation of judicial

proceedings.  Indeed, a remand might do quite the opposite because another defendant

convicted of an identical crime under identical circumstances could receive a different

---

[1] The Supreme Court has noted that the term "miscarriage of justice" does not mean the same thing in the plain error context as it does in the collateral review context. In *Olano*, the Court explained that in habeas cases a "miscarriage of justice" is synonymous with the defendant's actual innocence.  507 U.S. at 736.  However, a defendant can satisfy his burden of meeting the fourth prong of plain error analysis short of demonstrating that he is actually innocent of the alleged crime.  *Id.*

sentence from a less sympathetic judge. *Cf. Cotton*, 535 U.S. 625, 634 (arguing that correcting a plain error when confronted with overwhelming evidence of guilt would harm rather than further the fairness and integrity of the judicial system).

In contrast to many cases involving non-constitutional *Booker* error, correcting the plain error in Mr. Trujillo's sentence would not denigrate the fairness and integrity of the judicial system by magnifying the whim and caprice inherent in less restricted sentencing determinations. On the contrary, Mr. Trujillo presents a compelling case that objective consideration of the § 3553(a) factors warrants a departure, and perhaps a significant departure, from the sentence suggested by the Guidelines. To allow the mismatch between the sentence suggested by a principled application of the post-*Booker* sentencing framework and the actual sentence given to Mr. Trujillo would call into question the fairness, integrity, and public reputation of judicial proceedings. We thus believe that it is a sound exercise of our discretion to remand this case for resentencing despite Mr. Trujillo's failure to assert error below.

### III.

For the reasons set forth above, the judgment of the United States District Court for the District of New Mexico is VACATED and REMANDED.